UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TONY HARRISON,

                                  Plaintiff,

    vs.                                                   9:06-CV-902
                                                           (LEK/GJD)

DAVID STALLONE, Deputy
Superintendent of Programs, et al.,

                                  Defendants.
_____

TONY HARRISON
Plaintiff pro se

MARIA MORAN
Asst. Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

# REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

     In this civil rights complaint, plaintiff alleges that defendants retaliated against him for the exercise of plaintiff's First Amendment right to file a grievance regarding the conditions in the law library at Auburn Correctional Facility. (Dkt. No. 1). Presently before the court is defendants' motion to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to exhaust administrative remedies. (Dkt. No. 12). Plaintiff has responded in opposition to defendants' motion. (Dkt. No. 14).

## DISCUSSION

1. **Motion to Dismiss**

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The court must accept the material facts alleged in the complaint as true. *Id*. (citing *Cooper v. Pate,* 378 U.S. 546 (1964)(per curiam)). In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).

When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1998). The court may also consider public documents and those of which judicial notice may be taken. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991). When matters outside the pleadings are presented, the court may either exclude those matters or treat the motion as one for summary judgment under FED. R. CIV. P. 56. FED. R. CIV. P. 12(b).

2. **Facts**

Plaintiff alleges that on July 1, 2006, defendant Merville "accosted" plaintiff and asked him why plaintiff had complained about Merville. Complaint at p.4. Plaintiff states that he assured defendant Merville that he did not "write him up,"

rather, plaintiff was complaining about the allegedly inadequate conditions in the Law Library at Auburn Correctional Facility. *Id.* Plaintiff claims that defendant Merville told plaintiff that Merville would "just have to find something to write [plaintiff] up for." *Id.* Plaintiff claims that on the same day, plaintiff was notified by the company officer that plaintiff was being "keeplocked" by the Law Library officer. On July 2, 2006, plaintiff states that he was issued a misbehavior report by defendant Merville for "eating candy in the library."

Plaintiff states that he remained "keeplocked"[1] for 23 hours per day until the disciplinary hearing on July 5, 2006. Plaintiff states that he was found guilty of the misbehavior and received "time served" and a five dollar surcharge. Plaintiff states that on July 18, 2007, he was told by a Law Clerk that plaintiff was "being targeted by every shift in the Law Library" for complaining about the conditions in the Law Library. Complaint at p.5.

Plaintiff claims that he spoke with defendant Stallone on July 18, and plaintiff told defendant Stallone what the Law Clerk had said. Plaintiff claims that defendant Stallone told plaintiff that he "need[ed] to be harassed because defendant Stallone had to respond to plaintiff's grievance about the Law Library. *Id.* Plaintiff claims that later in the day on July 18, 2006, plaintiff was keeplocked by defendant Womak[2] and was issued a misbehavior report on July 19, 2006, charging plaintiff with stealing or

---

[1] "Keeplock" is a form of confinement where the inmate is confined to his own cell. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

[2] Plaintiff states that defendant Womak is also a Law Library officer. Complaint at p.5.

3

misusing state property. Plaintiff states that defendant Womak charged plaintiff with looking through a book that was given to plaintiff by another inmate. *Id.* Plaintiff claims that he was keeplocked for 23 hours until the disciplinary hearing. Complaint at p.5.

Plaintiff claims that defendants Merville and Womak violated plaintiff's First Amendment rights by retaliating against him for complaining about the Law Library. Plaintiff also claims that defendant Stallone did nothing to stop their actions, despite being told about their conduct by plaintiff.

### 3.     **Exhaustion of Administrative Remedies**

Defendants argue that plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement applies to ***all inmate suits about prison life***, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004). The Supreme Court has recently held, agreeing with the Second Circuit, that the exhaustion requirement is an ***affirmative defense***, not a jurisdictional prerequisite. *Jones v. Bock*, 127 S. Ct. 910, 921 (2007); *Giano v. Goord*, 380 F.3d at 675-76. The Second Circuit has also held that there are instances in which the exhaustion requirement may either be waived or excused. *Id.* at 675. (citations omitted).

Additionally, as with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies. *McCoy v. Goord*, 255 F. Supp. 2d 233, 247-48 (S.D.N.Y. 2003). Where questions of fact exist

as to exhaustion, summary dismissal[3] is not appropriate. *Pendergrass v. Corrections Officers*, 01-CV-243A, 2004 U.S. Dist. LEXIS 28224, *6-7 (W.D.N.Y. Sept. 1, 2004). At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement and specifying various instances in which the requirement could be waived or excused. *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004)(remanding case to determine if defendant's alleged threats constituted "special circumstances" justified plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)(whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004)(complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

Pursuant to these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure

---

[3] The court in *Pendergrass* was referring to summary judgment under FED. R. CIV. P. 56. The motion in this case is one to dismiss under Rule 12(b)(6), and the court may, therefore, only rely upon the statements made in the complaint.

to comply with the exhaustion requirement. *Id.*

The court notes that the Supreme Court's decision in *Woodford v. Ngo*, 126 S. Ct. 2378 (2006) may have changed the law regarding possible exceptions to the exhaustion requirement. In *Woodford*, the Supreme Court held that the PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies. In *Woodford*, the plaintiff filed a grievance that was rejected as "untimely." *Id.* at 2384. Woodford appealed the procedural denial through the administrative process, and "technically" exhausted his administrative remedies because there were no administrative remedies "available" to him. *Id.* However, the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Id.* at 2387. "Proper" exhaustion means that the inmate must complete the administrative review process ***in accordance with the applicable procedural rules***, including deadlines, as a prerequisite to bringing suit in federal court. *See id.* at 2385-93 (emphasis added).

It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. In fact, based upon the concurring opinion in *Woodford*, it appears that these decisions have ***not*** been overruled in that respect. In that concurring opinion, Justice Breyer specifically noted that two circuits, the **Second** Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 126 S. Ct. at 2393 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*,

380 F.3d 670, 677 (2d Cir. 2004))(Breyer, J. concurring).  Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a ***traditional exception that the statute implicitly incorporates***." *Id.* (emphasis added).

The Second Circuit has not specifically considered the effect that *Woodford* may have had on *Giano-Hemphill* line of cases.[4]  However, in *Ruggiero v. County of Orange*, 467 F.3d 170, 175-76 (2d Cir. 2006), the Second Circuit stated that it did not need to determine what effect *Woodford* has upon the Second Circuit case law in the exhaustion area because in *Ruggiero*, the court found that plaintiff would not have prevailed even assuming the continued validity of the ability to "excuse" non-exhaustion. *See also Reynoso v. Swezey*, No. 06-1835-pr, 2007 U.S. App. LEXIS 15105, *4 (2d Cir. June 25, 2007)(unpublished order)(continuing to state that the court was not deciding whether the decision in *Woodford* affected Second Circuit case law).  In *Sloane v. Mazzuca*, the court stated that it would follow the "current" law in the Second Circuit until the Second Circuit specifically addressed the issue. *Sloane v. Mazzuca*, 04-CV-8266, 2006 U.S. Dist. LEXIS 79817, *19-20 (S.D.N.Y. Oct. 31, 2006)(citation omitted).

---

[4] The court does note that the Second Circuit has decided that to the extent that its decision in *Braham v. Casey*, 425 F.3d 177, 183 (2d Cir. 2005) supported a plaintiff's argument that would have allowed for less than "proper exhaustion," it was overruled by *Woodford*. *See Loera Macias v. Zenk*, 2007 U.S. App. LEXIS 17795, *16-17 (2d Cir. July 26, 2007).  The issue upon which *Braham* was overruled involved whether "informal complaints" would be sufficient to exhaust a claim.  In *Loera Macias*, the Second Circuit implied that the "exceptions" to exhaustion, including availability, estoppel, and special circumstances continued to exist. *Id.* at *19-22.

7

The Supreme Court cited *Woodford* in *Jones v. Bock*, explaining that the holding in *Woodford* only imposed a requirement that in order to properly exhaust administrative remedies, the inmate must "'complete the administrative review process in accordance with the applicable procedural rules.'" *Jones*, 127 S. Ct. at 922 (citing *Woodford*, 126 S. Ct. at 2384). These rules are defined by the prison grievance process itself, and not by the PLRA. *Id.* In *Jones*, the Court ultimately held that exhaustion was not *per se* inadequate simply because a defendant that was later named in the civil rights complaint was not named in the grievance. *Id.* at 923.

New York State provides inmates with a grievance procedure to follow by which inmates may file complaints and appeal adverse decisions. N.Y. CORRECT. LAW § 139; N.Y. COMP. CODES R. & REGS. tit. 7 §§ 701.1 *et seq.* (NYCRR). The regular Inmate Grievance Program (IGP) consists of a three-tiered process. *Hemphill*, 380 F.3d at 682. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). *Id.* §§ 701.5(a)(1) and (b).[5] An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id.* § 701.5(d). Time deadlines apply at all levels of the process, but exceptions to any of the deadlines may be made based on "mitigating circumstances." *Id.* §§ 701.5(a)(1); 701.6(g). An inmate must appeal any denial of his grievance to the highest available administrative level. *Martinez v. Williams*, 349 F.

---

[5] The court notes that the sections governing inmate grievances were re-numbered in 2006. This court will refer to the current numbering which is different than the numbers that appear in *Hemphill*.

8

Supp. 2d 677, 682 (S.D.N.Y. 2004).

There is also an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 NYCRR § 701.8. Under this procedure, the inmate may (but is not required to) report the misconduct to the employee's supervisor. *Id.* § 701.8(a). The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the Superintendent for review. *Id.* § 701.8(b). Under the regulations, the Superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house", by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. *Id.* §§ 701.8(c); 701.8(d)(1)-(d)(3). An appeal of the adverse decision of the Superintendent may be taken to the CORC as in the regular grievance procedure. *Id.* § 701.8(h). A similar "special" procedure is provided for claims of discrimination against an inmate. *Id.* § 701.9.

In this case, plaintiff concedes that he did not file any grievances regarding defendants' behavior. Complaint at p.2. Plaintiff states that his reason for failing to file a grievance was fear of retaliation. *Id.* at p.3. Defendants argue that a "general fear" of retaliation will not excuse plaintiff's failure to exhaust. Defendants' Memorandum of Law at p.3. Because the Second Circuit has not specifically held that the "exceptions" to the exhaustion requirement have been affected by *Woodford*, this court will still evaluate this case pursuant to the three-part *Brownell* test to determine

9

if the exhaustion requirement has been waived or may be excused.

Plaintiff does not claim that the administrative procedure was not literally "available" to him. In fact, as stated above, there is a special procedure to bring grievances alleging harassment or discrimination against facility employees. 7 N.Y.C.R.R. §§ 701.8 & 701.9. Plaintiff, however, claims that the grievance procedure was not "available" due to the fear of retaliation or that the fear of retaliation constitutes a "special circumstance" excusing his failure to exhaust.[6] It has been held that a "general fear" of retaliation is *not* sufficient to excuse the exhaustion requirement. *See Hines v. Valhalla County Corr.*, 01 Civ. 6935, 2002 U.S. Dist. LEXIS 14550, *10-11 (S.D.N.Y. Aug. 8, 2002). If an inmate could simply state that he feared retaliation, there would no point in having a grievance procedure because as District Judge Scheindlin stated in *Hines*, "any inmate complaint can result in retaliation." *Id.*

However, it has also been held that grievance procedures may be rendered "unavailable" because of a "reasonable fear of retaliation." *Thomas v. Cassleberry*, 03-CV-6394, 2007 U.S. Dist. LEXIS 30129, *3-6 (W.D.N.Y. April 24, 2007). In *Thomas*, the court found that plaintiff's fears were "reasonable" due to his allegations concerning widespread beatings and shacklings shortly after a "mini-riot" at Southport Correctional Facility. *Id.* These allegations, together with plaintiff's claim that he was personally threatened by defendants if he did not "drop it" were sufficient to create a

---

[6] Plaintiff could also argue that the defendant's past allegedly retaliatory conduct estops them from raising the failure to exhaust as a defense.

10

"reasonable fear of retaliation," rendering the grievance procedure "unavailable" to plaintiff and excusing his failure to exhaust. *Id.* at *3.

In this case, the court cannot find that plaintiff had a "reasonable fear" of retaliation. The case is distinguishable from *Thomas* in which plaintiff had alleged that he was involved in a riot and that there had been other beatings. Plaintiff in this case simply stated in the complaint that he was "afraid of retaliation." In plaintiff's response to defendants' motion to dismiss, he appears to claim that he had a "legitimate fear" of retaliation because his substantive claim is one for retaliation, and that he has been the subject of retaliation in the past. (Dkt. No. 14 at 6).

If every plaintiff bringing a retaliation claim could have the exhaustion requirement excused by alleging a fear of further retaliation, it would create a general exception to exhaustion for retaliation claims. This is a result that the court does not believe was contemplated by the PLRA or by the Second Circuit in analyzing possible exceptions to the exhaustion requirement. Additionally, a general exception to the exhaustion requirement would eliminate the need for, or the use of, the special provisions in the New York State regulations for claims of employee harassment. Thus, plaintiff has not alleged either that the grievance procedures were "unavailable," nor has he sufficiently alleged that there were "special circumstances" that caused his failure to exhaust his administrative remedies.

In his response to defendants' motion to dismiss, plaintiff argues that the defendants are relying on plaintiff's "confusion" over the proper grievance procedure. (Dkt. No. 14 at 6). It is unclear to what "confusion" plaintiff is now referring. He

clearly knew what the grievance procedures were, since his substantive claim in this action is that defendants retaliated against him for using those grievance procedures. Thus, he could not have been "confused" about how to bring a grievance. He does not specify in his memorandum of law what that confusion was.

Finally, plaintiff argues that there are special circumstances justifying his failure to exhaust because plaintiff was transferred to another facility. (Dkt. No. 14 at 7). The court notes that the last allegedly retaliatory action by defendants occurred on July 19, 2006 when defendant Womak issued plaintiff a misbehavior report, charging him with violating a rule prohibiting stealing or misusing state property. (Dkt. No. 1 at ¶ 6). Plaintiff was not transferred to Sullivan Correctional Facility until July 31, 2006, eleven days later. Although the grievance may not have been decided before plaintiff was transferred, plaintiff had plenty of time to *file* a grievance under section 701.8, providing for an expedited procedure in cases of harassment.

The court also notes that the regulations provide for the processing of grievances and appeals after transfer. 7 N.Y.C.R.R. § 701.6(h). This section specifically provides that the response to a grievance filed by an inmate who has been transferred will be mailed to the inmates new facility, and an inmate transferred to another facility "may continue an appeal of any grievance." *Id.* §§ 701.6(h)(1) & (h)(2). Thus, the fact that plaintiff was transferred to another facility eleven days after the last incident does not excuse his failure to pursue the grievance procedures.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 12) be

**GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 29, 2007

                                          Hon. Gustave J. DiBianco
                                          U.S. Magistrate Judge